Steve H. Bergman (#13641)
**RICHARDS BRANDT MILLER NELSON, P.C.**
111 E. Broadway, Suite 400
Salt Lake City, Utah 84111
Telephone: (801) 531-2000
*Steven-bergman@rbmn.com*

Douglas M. Durbano (4209
Richard A. Bednar (#06074)
**DURBANO LAW FIRM, P.C.**
476 W. Heritage Park Blvd., Ste. 105
Layton, UT 84041
Telephone: (801) 776-4111
Fax No.: (385) 776-1121
*office@durbanolawfirm.com*
*richard@durbanolawfirm.com*

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| **BSJ TRAVEL INC.**, a Utah Corporation, including and on behalf the present and future officers and agents of BSJ Travel, Inc.<br><br>Plaintiffs,<br><br>vs.<br><br>**OGDEN CITY AIRPORT**; and **OGDEN CITY**, a municipality in the State of Utah; **GARY WILLIAMS**, an individual and Government Official; **BRAYANT GARRETT**, an individual and Government Official; and **JOHN DOES 1-10**.<br><br>Defendants. | **VERIFIED COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, AND JUST COMPENSATION (VIOLATION OF CONSTITUTIONAL RIGHTS)**<br><br><br><br><br><br>Civil No. 1:22-cv-716<br><br>Judge |

Plaintiffs BSJ Travel Inc. ("BSJ"), through their undersigned counsel, submit this

Verified Complaint for Declaratory Relief, Injunctive Relief, and Just Compensation against

Ogden Regional Airport ("**Ogden Airport**" or "**Airport**"), a subdivision of Ogden City and Ogden City("**Ogden**"), a municipality and subdivision of the State of Utah **("Utah")** and Gary Williams ("**Williams**"), individually and as a Government Official of Ogden, and Bryant Garrett ("**Garrett**") individually and as a Government Official of Ogden.

## INTRODUCTION

This is an action for declaratory, injunctive, extraordinary relief and damages (including cost and fees) arising from the Defendants unconstitutional violation of civil rights; denial of due process; taking; withholding or otherwise holding and denying access to and of property without just compensation; discriminatory, arbitrary and capricious behavior; abuse of governmental monopolistic power; violation of its own governmental ordinances in denying Plaintiffs access to its property and the Ogden Airport facility generally, and by specifically turning off electronic gate passes known as "Security Badges" previously issued to an agent of BSJ, notwithstanding that the individual agent of BSJ has qualified in all ways, and for many years in the past, for such access privileges.  It is alleged that the Defendants have ulterior motives designed to coerce other behaviors unassociated with the security of the Airport.

## PARTIES

1.BSJ is a Utah corporation which leases ground from Ogden for the placement and ownership of its hangar and offices ("Hangar N-1460") constructed thereon for the use of aeronautical and all other legal activities associated with the Ogden Airport located in Weber County, Utah.

2.All Plaintiffs may hereafter be referred to as 'Plaintiffs' or "Hangar Owners."

3.Ogden Airport is a subdivision of Ogden, a municipality in Weber County, State of Utah which is the operating branch of Ogden dealing with the Ogden Airport which has the

official designation as 'KOGD' within the national transportation system of the United States of America via the Federal Aviation Administration ("FAA").

4. Ogden is a municipality of the State of Utah located in Weber County, Utah.

5. Williams is an Ogden City Attorney and Administrative officer with authority and control over the Ogden Airport.

6. Garrett is an Ogden City Officer, Administrative Officer, and manager with control and authority over and of the Ogden Airport.

7. John Does 1-10 are parties whose true identities are not yet know. Plaintiffs will amend their complaint to reflect the true identities of these parties as they are discovered.

8. All Defendants may hereafter be referred collectively as "Defendants".

## JURISDICTION AND VENUE

9. This court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 because this dispute involves a federal question and Constitutional claims.

10. Plaintiffs allege that Defendants have violated the 5th Amendment, taking property without just compensation; the 14th Amendment, by depriving a person of certain liberties and property without due process or equal protection. Defendants have also violated the Utah Constitution in similar ways, all leading to a denial of certain civil liberties in violation of 42 U.S.C. § 1983.

11. Venue is proper in this court pursuant to 28 U.S.C. § 1391 because Defendants are domiciled in the State of Utah and the events giving rise to the claims occurred in this judicial district.

## GENERAL ALLEGATIONS

12. BSJ is an owner of a Hangar, N-1460, that has been constructed, built, and placed on real property owned by Ogden Airport pursuant to a "PRIVATE HANGAR LEASE AGREEMENT BETWEEN OGDEN CITY CORPORATION AND BSJ TRAVEL, INC HANGAR N-1460", dated December 1, 2018, by and between Ogden and BSJ ("Hangar Lease")

13. The Hangar Lease is for a term of 15 years regarding the ground known as "Hangar or Lot number North (1460) on the Ogden Hinckley Airport Hangar Parcel Plat which contains 8,300 sq feet of aero improved and 1,080 unimproved sq. feet" (the "Lot").

14. Plaintiff has constructed a Hangar and office space on the Lot to conduct its business and to store, maintain, and keep safe its personal property, including airplanes, helicopters, aeronautical equipment, apparatus, furniture, equipment, and fixtures associated with its aircraft. This is a secure facility that is within the Airport boundaries and requires a Security Badge to legally access this facility.

15. Ogden Airport is a public aviation facility owned and managed by Ogden, with oversight by the Utah Aeronautical Division and the Federal Government as a facility that is part of the National Transportation System, via the FAA and the Transportation Security Administration ("TSA").

16. The Airport is not a public service entity, airport authority, or any other special service district.

17. The Airport is part of a national air transportation system and falls under the purview of the United States of America via the regulatory body known as the Federal Aviation Administration (the "**FAA**") pursuant to 49 U.S.C.A. §§ 40101, *et seq.* and applicable federal regulations.

18. The Airport has applied for and received certain FAA grants for the purpose of airport improvements. These grants require and impose certain FAA "assurances" upon Ogden as a "public agency sponsor."

19. The assurances include all "general Federal Requirements," all "Executive Orders," and Specific Assurances.

20. Some years ago, Ogden received money from the FAA and placed a perimeter fence around the airport facility designed with height and barbed wire at the top to prevent penetration except at designated gates and placed gates at each entrance. The design is intended to create a secure facility to accommodate the safety concerns of the TSA and commercial airline carriers, one of which was coming to Ogden to conduct business as a Common Airline Carrier subject to the TSA oversight for safety and prevention against terrorist acts such as 9-11. (Commercial Airline Carriers and the TSA currently have ceased conducting operations at Ogden for reasons unrelated to this matter.)

21. Notwithstanding that all commercial passenger operations and the TSA have ceased operations at the Airport, Ogden continues to require all access to the airport be done via the electronic gates and security badging system that ties the gate opening to a computerized system controlled by Ogden Airport. Accordingly, without a computer-recognized badge with an embedded authorized chip, a lessee such as Plaintiff's officers, agents, and employees cannot access the airport facilities and specifically the leased Lot and structure thereon, such as the Hangar as well as any and all property placed on the Lot or stored in the Hangar including its aeronautical equipment, airplanes and helicopters.

22.     The TSA only requires that airports, including the Ogden Airport, adopt and carry out a security program to provide for the safety and security of persons and property on an aircraft operating in air transportation. 29 C.F.R. § 1542.101.

23.     Included in these regulations is the requirements for airports to adopt a Tenant Security Program to ensure that airport tenants assume responsibility for specified security measures of the airport's secured area. 29 C.F.R. § 1542.113.

24.     Ogden Airport utilizes security badges as an integral part of its Tenant Security Program and requires all tenants to apply for and receive a badge to obtain access to airport property as required by TSA even when TSA is no longer requiring such and are not operating at Ogden.

25.     Pursuant to the Civil Aviation Security regulations promulgated by TSA, "[n]o person may . . . [u]se, allow to be used, or cause to be used, any airport-issued or airport-approved access medium or identification medium that authorizes the access, presence, or movement of persons or vehicles in secured areas . . . in any other manner than that for which it was issued[.]" 29 C.F.R. § 1540.105.  This limitation or restriction would and should apply to Ogden, as well as all the Defendants.

26.     Notwithstanding the foregoing, the Airport and its agents including the individual Defendants have consistently used the security badges it issues under its Tenant Security Program for purposes other than as provided by the TSA, including, and especially, to penalize, coerce or retaliate against its ground lessors for matters unrelated to security.

27.     The Defendants can "at will" shut off any specific individuals security badge with the stroke of a few keys on a computer located exclusively at the Airport office and controlled exclusively by the Defendants,

6

28.     By the Defendants electronically marking a box on their computer they can deactivate a security badge and thereby deny legal, constructive, and actual physical access to the Airport and a person's property, including airplanes, expensive equipment, and property, some of which is essential to conduct business.

29.     On or about September 10, 2022, the Defendants electronically shut off the gate access and security badge for Mr. Douglas M. Durbano ("Durbano"), who is the President of BSJ Travel Inc, thereby denying Plaintiff any access to the airport facility and the personal property and business premises of his company, BSJ Travel Inc., including aeronautical equipment and airplanes.

30.     Durbano is also a practicing attorney who had recently filed a lawsuit against the Defendants, which matter is currently pending on appeal in the United States Court of Appeals for the Tenth Circuit.  *See Wheelwright v. Ogden City Airport*, No. 22-4083 (10th Cir).

31.     BSJ, as the "Sponsoring Company" on the Airports "Badge Application" sought to have Durbano's' security badge reinstated or reactivated.

32.     Pursuant to various emails and phone calls involving counsel for the Airport due to other pending litigation, an appointment was made for Durbano to present himself, along with the required Original Badge Application, Passport, and other documents relating to the qualifications to obtain the Security Badge and Airport access, as requested by the Defendants and presumably the TSA.

33.     On October 19, 2022, Durbano did in fact present himself in person and all required documents to the Airport main office and delivered the documents as well as viewed the required security information and videos.  *See* Exhibit 1.  Then took a written examination which he passed.

7

34. While taking the test and viewing the security video, Durbano sat in the same office as several staff members who proclaimed, while talking loud enough for Durbano to clearly overhear, that other tenants were coming in to get their security badges renewed but there would not be a problem because: "They were good guys". The implication was obvious and apparently made intentionally to let Durbano know that he was disqualified as not being a "Good Guy" and therefore would not be getting his badge.

35. Plaintiff alleges that Defendants maintained or does maintain a list of persons who are considered cooperative; who have not participated in the previous class action of 85 plaintiff litigants suing Ogden Airport for lease violations and other constitutional violations.

36. After the testing was complete, Durbano surrendered his current badge, under the assumption that a new picture would be taken and inserted in the badge holder, as has been historically done in the past many years whenever Durbano has gone in to renew his badge.

37. This time, the Defendants took Durbano's badge and informed him that he would be contacted sometime in the future by Bryant Garrett, a Defendant, who would let him know when his badge would be given back to him and reinstated. Garrett would not come out of his private office and address Durbano or the situation at that time. In the interim, Durbano's access to the Airport and BSJ's leased Lot/Hangar facility was terminated.

38. Durbano responded "No, that would not be acceptable" and requested his renewed badge be issued and if not, he needed to know why not and what criteria was being applied to his application sponsored by BSJ. Durbano also indicated that he would begin recording the conversation for potential evidence and recommended that the City Attorney, Gary Williams be brought into the conversation and decision-making process, as Williams was the attorney who helped to facilitate the appointment for the badge renewal or reissue.

8

39. Williams, on a speaker phone and with the knowledge he was being recorded, would not state why Durbano's badge was being taken and his future access denied by the Government. When pressed for specifics as to whether Durbano had met all the criteria for a security clearance, again Williams would not answer, stating: "This is not a deposition." Durbano asked specifically: "Does this have anything to do with the fact that our office is currently engaged in litigation with the Airport and Ogden City?" Williams again responded" "This is not a deposition. We're not going to play the game".

40. Durbano pressed further and specifically asked if he needed to file for or seek some kind of court intervention the resolve the matter. Again, Williams would not answer directly, but indicated: "You do what you, you're, you're, an attorney". The call ended.

41. Durbano left the Airport office without his security clearance badge or access to BSJ property, or any other property located on the Airport.

42. Later that same day, Durbano and Williams spoke by phone. In that conversation, Williams confirmed that he and the City expected Durbano to comply with unrelated inspection demands and instructions from Ogden associated with another hangar (S-631) and renter issues left over from a renter who had fled the airport for reasons of his own after he attempted to get a security badge a year and half earlier. Williams wanted Durbano to capitulate in the Governments demands that were unrelated to security issues and BSJ in any way stating: "Don't you have anything better to do than sue the City?"

43. Hangar S-631 was a named plaintiff in the cause of action currently on appeal in the United States Court of Appeals for the 10th Circuit. *See Wheelwright v. Ogden City Airport*, No. 22-4083 (10th Cir).

44. Plaintiff had the right and expectation that the Defendants would comply with appropriate discovery rules in order to inspect hangar S-631.

45. Plaintiff alleges that it and its agent, Durbano, have met all requirements associated with the issuance of a security badge. This is further confirmed by the fact that the Vice President of BSJ (Jared Brown) had just recently renewed his security badge with Ogden and dealt with the same process as did Durbano and had confirmed that BSJ qualified for the issuance of security badges under its lease and was otherwise in full compliance and apparently was not on the "bad guy" list as he personally nor BSJ has ever sued Ogden.

46. Williams has stated that he and Garrett, on behalf of Ogden are acting under the ordinance referred to as Title 8 Airports found in the City Code of Ordinances, and are, therefore, acting under and pursuant to color of law in denying or depriving the Plaintiffs of their constitutionally guaranteed civil, property, and due process rights.

47. The Defendants security badging specifically implements a remedy of arrest, incarceration, and criminal prosecution if entry is made onto the airport facility without a badge.

48. It is alleged that Plaintiff's denial of access to the Airport is just one of many similar denials by the City and Airport, creating a pattern and history of behavior that is widespread, a well-settled practice or standard of operating that is pursuant to either an official ordinance or an informal policy or decision made by the City, Williams and/or Garrett.

49. It is alleged that notwithstanding that both Williams and Garrett have taken the required public oath of office to support and defend the Constitution that each has adopted a deliberate indifference to that oath and the Constitutional rights enumerated therein.

50. It is alleged that the individual Defendants' actions and conduct are malicious and in reckless disregard of Plaintiffs rights.

51. It is alleged that Defendants behavior is tantamount to ill will or spite, or is done for the purpose of injuring Plaintiff by bringing to bear the unbridled power of the Governmental bureaucracy and monopolistic control of certain rights and privileges including the police power of arrest and detention as a means of depriving persons of their property and civil rights, requiring an assessment of punitive damages against Defendants in order to prevent future bad prohibited behavior.

52. It is alleged that Defendants have violated 42 U.S.C. § 1983 – providing a civil cause of action for deprivation of rights, privileges, or immunities secured by the Constitution and laws and are thereby liable to Plaintiffs who have been injured thereby for damages and attorney fees and costs pursuant to 42 USC Section 1988.

## FIRST CAUSE OF ACTION
**(Temporary, Preliminary, and Permanent Injunction)**

53. Defendants' unconstitutional actions have and will continue to irreparably harm Plaintiff and its agents and business by depriving them of their property and use thereof without just compensation and must be restrained.

54. The infringement of a constitutional right demonstrates a sufficient showing of irreparable injury.

55. Defendants' unconstitutional demands to inspect the inside of hangars and other personal property contained within the hangars, at the risk of having the City shut off security badges denying access and possession to property, without due process, including obtaining properly issued court orders and or subpoenas or search warrants constitutes a violation of constitutional protected rights and must be restrained.

11

56. Defendants unconstitutional use of coercive governmental policing powers to threaten, demand, or otherwise obtain a desired civil remedy by denying use, possession and access to property constitutes a violation of civil liberties and must be restrained.

57. BSJ has limited remedies at law that are not adequate to remedy its past and ongoing injuries and, therefore, Defendants must be restrained.

58. Injunctive relief will not cause hardship to anyone but will protect and preserve Plaintiffs constitutionally protected rights as defined above and prevent further infringement by Defendants on Plaintiffs rights and eliminate the chilling effect of such infringements on future exercise of protected constitutional rights against government abuse of power and, therefore, the government must be restrained.

59. The vindication of constitutional freedoms and protections of constitutional rights is in the public interest.

60. BSJ is entitled to a temporary, preliminary, and permanent injunctive relief prohibiting Defendants from past and future violations of its citizens rights or threatened violations or use of corrective governmental force, police power and the misuse of such power.

61. Defendants must be ordered to "Cease and Desist" from denying BSJ and its agents access to their property and possession thereof by immediatly issuing any appropriate gate pass mechanism or removing such gate restrictions so long as BSJ and its agents are not a security risk.

**SECOND CAUSE OF ACTION**
**(Fifth and Fourteenth Amendments – 42 U.S.C. § 1983)**
**(Physical Taking without Just Compensation)**

62. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

63. The Fifth Amendment to the Constitution of the United States provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. AMEND. V.

64. The Fifth Amendment's prohibition on taking private property for public use without just compensation applies to the States through the Fourteenth Amendment to the Constitution of the United States.

65. The Defendants have taken Plaintiffs possession of and thereby taken actual possession of Plaintiffs property without paying just and fair compensation as required by the law and constitution.

66. The Defendants are liable for and must pay just compensation for Plaintiffs losses.

**THIRD CAUSE OF ACTION**
**(Retaliation in Violation of the First Amendment's Petition Clause – 42 U.S.C. § 1983)**

67. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

68. The First Amendment to the Constitution protects the right to petition this Court for redress of grievances.

69. The protections afforded under the First Amendment applies to the States through the Fourteenth Amendment to the Constitution of the United States.

70. In this lawsuit as well as past lawsuits, Plaintiffs are engaged in a constitutionally protected activity because they are seeking redress of their grievances against Defendants. *Van Deelen v. Johnson*, 497 F.3d 1151, 1156 (10th Cir. 2007).

71. In response to past lawsuits and this lawsuit, and in retaliation therefor, Defendants have published their intent to withhold badge renewals from any persons named in the actions irrespective of their contractual, regulatory, and constitutional rights.

72. The Defendants' actions have had a chilling effect on Plaintiff's and others willingness to continue in these types of proceedings. Some plaintiffs have asked to be removed from any suit because of the Defendants' retaliation; BSJ will continue in these proceedings, but under undue distress and uneasiness considering Defendants refusal to provide access to property or otherwise to renew the gate passes or security badges for Plaintiff and its agents.

73. When public officials feel free to wield the powers of their office as weapons against those who question their decisions, they do damage not merely to the citizen in their sights but also to the First Amendment liberties and the promise of equal treatment essential to the continuity of our democratic enterprise. *Id.* at 1155.

74. Plaintiffs have been damaged by Defendants' unconstitutional retaliation in an amount to be proven at trial, including punitive damages, fees and costs.

## FOURTH CAUSE OF ACTION
**(Violation of Civil Rights - 42 U.S.C. § 1983)**

75. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

76. At all times relevant described herein, both Williams and Garrett were acting in their capacity as governmental officials and under color of state law.

77. The conduct of Williams and Garrett deprived Plaintiff, and specifically, its president, Durbano, of rights, privileges and/or immunities guaranteed und the U.S. Constitution and federal law.

78. As a result of the conduct of Williams and Garrett, Plaintiff has suffered damages in an amount to be proven at trial.

79. Plaintiff is, therefore, entitled to monetary damages, including punitive damages, to provide financial compensation for Williams and Garrett's reckless indifference to Plaintiff's constitutional rights.

80. Plaintiff is also entitled to an award of interest and reasonable attorney fees and costs expended in this action, pursuant to the Civil Rights Attorneys Fees Awards Act of 1976, 42 U.S.C. § 1988(b) and other relevant statutes.

## FIFTH CAUSE OF ACTION
### (Declaratory Relief – 28 U.S.C. § 2201)

81. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

82. Plaintiff and Defendants have an actual controversy, thus invoking the authority of this Court to enter declaratory relief.

83. Plaintiff, in the past, has lawfully applied for and received security badges under the Airport's Tenant Security Program in compliance with the regulations set forth by TSA and Ogden City.

84. Defendants have now unlawfully deprived some of Plaintiff's agents, but not others, of the use of their security badges and access to airport property and their other business and personal property for reasons unrelated to the security measures set forth by TSA.

85. Defendants deprivation of certain Plaintiff's agents (Durbano, but not Brown) right to be issued and to lawfully use their security badges to open gates and otherwise access the airport without risk or threat of being arrested, constitutes a violation TSA regulations, law, equity, Ogden City ordinance, and the constitutions of the United States of America and Utah.

86. Plaintiffs are entitled to a Declaratory Judgment finding that:

   a. Defendants are unlawfully withholding access to the Airport;

   b. Defendants have unlawfully taken, refused to issue or reissue gate passes by use the Security Badge computerized mechanism that electronically open access gates;

   c. Defendants' conduct has created a reliance of interest in Plaintiffs which, if Defendants are permitted to alter their course of conduct, would cause damage to Plaintiffs;

   d. Defendants' conduct constitutes a taking of personal property, entitling Plaintiff to just compensation.

   e. Defendants' conduct with respect to management of security badges at the airport is unlawful and has deprived Plaintiff of access to their property and other personal rights;

   f. Such other declaratory relief the Court deems proper.

### *ENTITLEMENT TO INJUNCTIVE RELIEF*

87. Defendants' conduct amounts to unconstitutional taking of private property, and a deprivation of rights, which causes irreparable harm to Plaintiffs.

88. Defendants' conduct is ongoing and will continue to cause irreparable harm to Plaintiff unless and until an injunction is entered by the Court.

89. The continual injury to Plaintiffs outweighs any damage to Defendants that could be caused by an injunction.

90. The injunction is not adverse to the public interest, rather it is in favor of the public interest because Defendants are knowingly depriving the rights of its own citizens at large.

91. Wherefore, the Court should enter injunctive relief against Defendants requiring that Defendants cease their unlawful takings, and unlawful use of security badges to facilitate such takings and denial of access, use and possession to private property.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask this Court to enter judgment in Plaintiff's favor and against Defendants to:

A. Declare the Defendants' use of security badges for non-security purposes as illegal and a deprivation of Plaintiff's rights;

B. Permanently enjoin Defendants from using security badges for non-security purposes;

C. Award just compensation for Defendants' taking of Plaintiffs' property in violation of the Fifth Amendment;

D. Award damages or restitution for Defendants' violation of Plaintiffs' rights in using security badges for non-security related purposes;

E. Award prejudgment interest at the maximum rate allowed by law;

F. Award punitive damages in amount appropriate to prevent future constitutional violations.

G. Award Plaintiffs their reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

H. Award any other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated this 14th day of November, 2022.

                    **RICHARDS BRANDT MILLER NELSON, P.C.**
*Attorneys for Plaintiff*

DURBANO LAW FIRM, P.C.

/s/ *Douglas M. Durbano*
Douglas M. Durbano
Richard A. Bednar
*Attorneys for Plaintiff*

## VERIFICATION

I, Douglas M. Durbano, declare as follows:

1. I am over 18 years of age, a resident of the State of Utah, and the President, agent and manager of BSJ Travel Inc., the Plaintiff in this matter.

2. I have personal knowledge of myself and my activities, including those set out in the foregoing Verified Complaint and if called to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself and my activities are true and correct, as are the factual statement concerning the conduct of Plaintiff, BSJ Travel Inc.

Dated this 14th day of November, 2022

/s/ *Douglas M. Durbano*
President, Manager, and Agent of BSJ Travel, Inc.