Stephen F. Noel (7952)
Ryan D. Poole (18513)
**SMITH KNOWLES, P.C.**
2225 Washington Blvd., Suite 200
Ogden, UT  84401
Telephone:     (801) 476-0303
Facsimile:      (801) 476-0399
Email:          snoel@smithknowles.com
                rpoole@smithknowles.com

*Attorneys for Defendant*

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| BSJ TRAVEL INC., a Utah corporation including and on behalf of the present and future officers and agents of BSJ Travel, Inc.,<br><br>Plaintiffs,<br><br>vs.<br><br>OGDEN CITY AIRPORT; OGDEN CITY, a municipality in the State of Utah; GARY WILLIAMS, an individual and Government Official; BRYANT GARRETT, an individual and Government Official; and JOHN DOES 1-10,<br><br>Defendants. | **DEFENDANTS' MOTION TO DISMISS**<br><br>Civil No. 1:22-cv-00156<br>Judge Dale A. Kimball |

Defendants,[1] by and through their counsel of record, Stephen Noel and Ryan D. Poole of

the law firm Smith Knowles, P.C., hereby submit this motion to dismiss under Rule 12(b)(6) and

Rule 12(b)(1) of the Federal Rules of Civil Procedure.

---

[1] Ogden City Airport is one of the municipal divisions within Ogden City's Community and Economic Development department. It is not a separate entity for purposes of municipal governance and management and will be referred to herein jointly with Ogden City as "Ogden City."

## I.  REQUESTED RELIEF AND GROUNDS THEREOF

Defendants respectfully request that the Court dismiss Plaintiffs' complaint and all causes of action stated therein. Plaintiff has failed to state a claim for its five causes of action, only two of which are substantive, as follows: 1. Injunctive Relief; 2. Physical Taking (substantive); 3. Retaliation (Substantive); 4. Violation of Civil Rights; and 5. Declaratory Relief.[2] In addition, these claims or a version of them and/or the relief requested therein were twice addressed and dismissed by Judge Barlow in another case: *Ogden Reg'l Airport Ass'n, Inc. v. Ogden City Airport*, 2022 WL 2670037 (D. Utah July 11, 2022), Case No. 1:21-cv-00075, which presently is under appellate review by the Tenth Circuit Court of Appeals (Case No. 22-4083) (hereinafter the "Class-Action").   Not only are the claims insufficiently pled, the express terms of the lease agreement between Ogden City and the Plaintiff, as well as the Ogden City policy/ordinance, controls their relationship and this dispute, thereby requiring the Plaintiff's claims to be dismissed and depriving this Court of subject matter jurisdiction over any state claims which may be inferred as remaining. Lastly, Defendants are entitled to recover attorney fees incurred in this matter pursuant to the terms of the lease agreement at issue in this dispute.

## II.  BACKGROUND AND PROCEDURAL POSTURE

The Class-Action was brought against Ogden City by a number of Plaintiffs, to include "Durbano Properties."  The Class-Action, which was twice amended and included claims such as physical and regulatory takings, unauthorized deprivation of airport access (security badges), retaliation and declaratory and injunctive relief, was dismissed by Judge Barlow—twice.[3] The

---

[2] Plaintiff also requests injunctive relief a second time under its own heading, but it's duplicative of the first cause of action and is not a numbered cause of action.

[3] In granting Ogden's first motion to dismiss, Judge Barlow analyzed and dismissed each cause of action for failure to state a claim. *Ogden Regional Airport Association, et al. v. Ogden City Airport and Ogden City*, 2022 WL 103792 (D. Utah 2022), Dkt. #46. Plaintiffs then amended their complaint and added new allegations, as well as causes of action for retaliation, breach of contract and of the covenant of good faith and fair dealing. *Id.* at Dkt. #57. Judge

similarity between many of the causes of action in the Class-Action and the current matter is striking.[4] For example, not only are their similar claims and causes of action, some of them are presented almost verbatim. *Cf.* Class-Action, Dkt. #57, pp. 31-32, 34-35 and current matter Dkt. #1, pp. 13-14, 15-16. There are other examples, too. Judge Barlow's Memorandum Decision and Order Granting Defendants' Motion to Dismiss in the Class-Action included the following: "Because Plaintiffs have failed to state a claim for which relief can be granted under federal law, and the court declines to maintain supplemental jurisdiction over Plaintiffs' remaining state law claims, Defendants' ***motion to dismiss is GRANTED***." *Class*-Action, Case No. 1:21-cv-00075, Memorandum Decision, Dkt. #98, p. 1.

Judge Barlow's decision also included the following:

- "Plaintiffs assert three main claims under § 1983 and the Declaratory Judgment Act: physical taking without just compensation in violation of the Fifth and Fourteenth Amendments, regulatory taking without just compensation in violation of Fifth and Fourteenth Amendments, and First Amendment retaliation." *Id*., p. 9.

- Plaintiffs' "allegations evince that any cause of action Plaintiffs may have against Defendants sounds in contract, and the possible availability of contract-based claims precludes the assertion of a taking claim under the Fifth Amendment." *Id*., p. 12. "Accordingly, Plaintiffs' physical taking claim must be dismissed." *Id*., p. 14.

Included within the many named Plaintiffs (some sixty-nine (69) or more named Plaintiffs, and "Does 1-100") in the Class-Action is a party named Durbano Properties, L.C. ("Durbano Properties"). *Class-Action,* Dkt. #57, p.4.   Durbano Properties has Utah Entity Number 2006630-

---

Barlow also granted Ogden's motion to dismiss the second amended complaint. *Id.* Memorandum Decision and Order Granting Defendants' Motion to Dismiss, Dkt. #98.

[4] While it is unclear, the focus of Plaintiff BSJ's current complaint appears to be limited to the security badge, while that of the Class-Action was Ogden City's alleged failure to renew certain leases. However, the security badges were also the subject of the Class-Action. The only material difference between the allegations of the similar causes of action alleged in the current case as opposed to the Class-Action appear to be the substitution security badges for lease renewals.

0160, with an address of 476 W. Heritage Park Park Blvd., Suite 105, Layton, UT 84041, with The Durbano Law Firm P.C. as the named Registered Agent with an address of 476 W. Heritage Park Park Blvd., Suite 105, Layton, UT 84041. Decl. of Counsel, Exhibit B, filed and served herewith. The Manager for Durbano Properties is Douglas M. Durbano – an attorney of record in the present case for BSJ Travel, Inc., and the Director and President of BSJ Travel, Inc.  Counsel of record in the Class-Action includes Douglas M. Durbano. *Class-Action*, Dkt. #57.  Notably, BSJ Travel, Inc. is not expressly named in the Class-Action, despite the allegation in that case by Plaintiffs that "Does 1-100 are parties whose true identities are not yet know [sic]."  *Id*., p. 9.  It is indisputable that BSJ Travel, Inc. was known to the Plaintiffs in the Class-Action case at all times material.

In the Class-Action the Plaintiffs, to include Durbano Properties, L.C., alleged that Ogden City was "Using TSA Security Badges to Penalize Leaseholders."  Class-Action, Dkt. #57 Sec. IX.  "[T]he Airport Manager has caused security badges to be found 'non-recognizable' on the security computer system for arbitrary reasons such as . . . alleged failures of potential future inspections or even alleged lease 'defaults' unsupported by contract or airport policy."  *Id*., p. 25, ¶ 158.  Durbano Properties alleged in the Class-Action that "Defendants have unlawfully deprived [Plaintiffs] of the use of their security badges and access to airport property for reasons unrelated to the security measures set forth by TSA[,]" and "Defendants' conduct constitutes a taking of personal property, entitling Plaintiffs to just compensation."  *Id*., pp. 34-35.

Plaintiffs, to include Durbano Properties, L.C., also sought injunctive relief in the Class-Action, and specifically allege, "the Court should enter injunctive relief against Defendants requiring that Defendants cease their unlawful takings . . . and unlawful use of security badges."  *Id*., p. 36.  In the "Prayer for Relief" in the Class-Action, Durbano Properties, L.C. requested the Court "[d]eclare the Defendants' use of security badges for non-security purposes as illegal and a

deprivation of Plaintiff's rights," and sought to "[p]ermanently enjoin Defendants from using security badges for non-security purposes," and award under the Fifth Amendment for compensation. *Id.*, p. 37.

The Plaintiff in the present case is BSJ Travel Inc., with a Utah Entity Number: 967739-0142, with a named Registered Agent of Durbano Law Firm, P.C., and the Registered Agent having an address of 476 W. Heritage Park Blvd. – Suite 105, Layton, Utah 84041. Decl. of Counsel, Exhibit A.  As mentioned, Douglas M. Durbano – an attorney of record in the present case – is the Director and President of BSJ Travel, Inc., and the Manager for Durbano Properties, L.C.

Finally, Plaintiffs have failed to exhaust their administrative remedies concerning their claim to have been deprived of access to the airport.

### III.  <u>STANDARD OF REVIEW</u>

Under Rule 12(b)(6), a court shall "assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In the context of a motion to dismiss, this requires the plaintiff to plead facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. If the allegations state a *plausible* claim for relief, the claim survives the

motion to dismiss. Id. at 679.[5] In this case,. while the Court must presume that Plaintiffs' factual allegations are true, Plaintiffs have failed to provide the proper foundation of facts necessary to sustain their claims.

## IV.  <u>RELEVANT FACTS</u>

1.     Ogden City is a municipality located in the State of Utah; Ogden City Airport is a division of Ogden City.

2.     Plaintiff BSJ is a Utah corporation with its principal place of business in Weber County, State of Utah.

3.     As discussed above, the Class-Action case involves many of the same parties, claims and alleged facts, Case No. 1:21-cv-00075, and is presently under appellate review by the Tenth Circuit Court of Appeals (Case No. 22-4083) following dismissal by this Court's District Judge David Barlow. *Ogden Reg'l Airport Ass'n, Inc. v. Ogden City Airport*, 2022 WL 2670037 (D. Utah July 11, 2022).

4.     Plaintiff is a tenant leasing property owned by Ogden City and located at the Ogden-Hinckley Airport (the "Airport"). Plaintiff has leased a hangar, N-1460, at the Airport under a lease dated December 1, 2018. *See* Verified Complaint, Dkt. #1, p. 2, ¶1; *see also*, Decl. of Bryant Garrett, Exhibit A (BSJ Travel Lease Agreement ("BSJ Lease")), filed and served herewith.  The Airport is owned, maintained, and operated by Ogden City. The City's management and operation of the Airport is governed by Title 8 of the Ogden City Code. That portion of the

---

[5] The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "lack of subject-matter jurisdiction" and for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(1), (6). Rule 12(b)(1) motions to dismiss "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject-matter jurisdiction; or (2) a challenge to the actual facts upon which subject-matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Here, Plaintiff BSJ's complaint appears entirely to consist of federal claims. However, given that the lease agreement and other city ordinances control this dispute, any remaining state law claims which may be inferred should be dismissed, in that the Court would be deprived of subject matter jurisdiction. Hence, Defendants' use Rule 12(b)(1).

Ogden City Code contains the administrative provisions, rules and regulations concerning leases and other commercial activities, minimum standards, rates and charges, and additional information necessary to govern and manage the Airport. *See* Ogden City, Municipal Code § 8–1–1 et seq.

5.    Ogden City's management of the Airport is subject to federal statutes and regulations that pose additional requirements on the City concerning its operations, some of which relate to safety and security for the public.

6.    The adopted Ogden City Administrative Policy 2070-1 ("Purpose"), relating to airport badges, provides in part:

> "The granting of an Airport Identification Badge ("Badge") permitting the bearer unescorted access authority to secure areas within the airport, **is a privilege not a right**. **Airport tenants, operators, and users have no contractual or property interest in the issuance or retention of a Badge**. A Badge must be relinquished by the bearer, upon demand of an ASC. **The city retains ownership of a Badge after it is issued**. ... **A Badge bearer is also entrusted to escort non-badge holders in secure areas of the airport consistent with the Airport Security Plan**. The issuance of a Badge **reflects the city's confidence in the bearer to act on the city's behalf to ensure compliance with city security policies. An ASC may reasonably conclude that a person's failure or refusal to comply with airport-related laws, ordinances, policies, regulations, rules, and contractual obligations negatively reflects on the person's reliability and trustworthiness to carry out airport security obligations on behalf of the city. Furthermore, verifying a person's compliance with previously granted airport privileges, before granting new or additional privileges, aids in the efficient management of the airport and encouragement of airport compliance. Thus, a person's noncompliance with airport-related laws, ordinances, policies, regulations, rules, and contracts may disqualify a person from receiving or retaining a Badge, as set forth in this policy**."

> Decl. of Counsel, Exhibit C, filed and served herewith.

7.    The adopted Ogden City Administrative Policy 2070-2 ("Policy"), relating to airport badges, provides in part:

> It is the policy of the Ogden City administration that an Airport Security Coordinator (ASC) **may exercise its discretion to deny, delay or revoke** issuance of an Airport Identification Badge to a person who fails or refuses to comply with airport-related obligations, as follows:

A.   Compliance Inquiries: As a part of the Badge application process, an ASC may reasonably inquire into **an applicant's compliance with airport-related laws, ordinances, regulations, policies, rules, and contracts**.

B.   Badge Denial: An Airport Security Coordinator **may deny, delay, or revoke issuance** of a Badge to any person who the ASC reasonably determines to have:

1.   Engaged in serious violations of airport-related laws, ordinances, regulations, policies adversely affecting the safety, security or well-being of the airport, its facilities, or its users, with or without prior notice; or,

2.   Failed or refused to timely comply with any airport-related laws, ordinances, regulations, policies, rules or contracts, upon notice of a violation.

C.   Reconsideration: A person who has been denied an Airport Identification Badge, or whose Badge has been revoked, **may submit a written request** to the Airport Manager/Primary ASC to reconsider denial or revocation of issuance of a Badge. The writing should include a detailed description of all facts relevant to the request, including those facts related to the person's compliance and resolution of any alleged violations. The Airport Manager/Primary ASC may exercise reasonable discretion to grant or deny requests for reconsideration.

D.   Grievance: **Any person who claims a severe hardship caused by an abuse of discretion by the Airport Manager/Primary ASC in denying a request for reconsideration may file a grievance pursuant to Section 8-1-5, Ogden City Code**.

E.   Airport Security Plan: This administrative policy is subordinate to, and in furtherance of, the Airport Security Plan. If any term of this policy is found to conflict with the Airport Security Plan, the terms of the Airport Security Plan shall govern and control. Any term used in this policy shall have the same definition as that term signifies in the Airport Security Plan."

*Id*.

8.   Plaintiff BSJ's "Prayer for Relief" requests that the Court: "[d]eclare use of security badges . . . as illegal and a deprivation of Plaintiff's rights," "[p]ermanently enjoin Defendants from using security badges . . .," and "[a]ward damages or restitution for Defendants' violation of Plaintiffs' rights in using security badges. . ." Verified Complaint, Dkt. #1, p. 17 (filed November 14, 2022); *Cf.* Class-Action Complaint, Dkt. #57, pp. 36-37.

9.   Plaintiff BSJ has alleged, to include by way of a Verified Complaint:

a.   Plaintiff "BSJ" has a lease agreement "dated December 1, 2018, by and between Ogdnen and BSJ." Verified Complaint, p. 4, ¶ 12.  The subject lease agreement is for Hangar N-1460;

b.   Ogden City "shut off the gate access and security badge for Mr. Douglas M. Durbano ('Durbano'), who is the President of BSJ Travel, Inc., thereby denying Plaintiff any access to the airport facility[.]";

c.   "Hangar S-631 was a named plaintiff in the cause of action currently on appeal in the United States Court of Appeals for the 10th Circuit." Verified Complaint, p. 9, ¶ 43;

d.   "[T]he Vice President of BSJ (Jared Brown) had just recently renewed his security badge with Ogden" and "had confirmed that BSJ qualified for the issuance of security badges[.]"  Verified Complaint, p. 10, ¶ 45;

e.   An officer of Plaintiff BSJ has had access, and thus Plaintiff BSJ has had access, to Hangar N-1460 at all times material, despite just Mr. Durbano not having security badge access for a time relating to contract default by Durbano Properties, L.C., and with Mr. Durbano having his security badge re-activated on November 18, 2022 (*See* Decl. of Garrett, ¶4);

f.   Plaintiff alleges Ogden City deprived Mr. Durbano a security badge, "but not Brown[.]"  *Id*., p. 15, ¶ 85.  Plaintiff BSJ has had access at all times material by way of Mr. Brown's use of his security badge.  Despite this fatal flaw in Plaintiff's claims here, Plaintiff alleges Ogden "unlawfully deprived some of Plaintiff's agents, but not others, of use of their security badges[.]"  *Id*., ¶ 84.

10.     The class-action Plaintiffs presented an unsuccessful motion for a preliminary injunction, field October 12, 2021, in Case No. 1:21-cv-00075.

11.     The BSJ Lease Agreement for the parties here provides, in part, the following regarding any access:

> "Tenant is responsible to comply (at Tenant's sole cost) with all security measures that City, the United States Transportation Security Administration, or any other governmental authority having jurisdiction may require in connection with the Airport, including, but not limited to, any access credential requirements, any decision to remove Tenant's access credentials, and any civil penalty obligations and other costs arising from breach of security requirements caused or permitted by Tenant or Tenant's Associates.  Tenant agrees that City has the right (in City's sole discretion) to impose any Airport security requirements that City may determine. Tenant further agrees that Airport access credentials are the property of the City and may be suspended or revoked by City in its soled discretion at any time. . . . ."

> Decl. of Garrett, Exhibit A (at pp. 4-5).

12.     The BSJ Lease Agreement provides the following relating to access:

> "City for itself and its employees, officers, directors, agents, contractors, subcontractors, suppliers, invitees, volunteers and other representatives ('City's Associates') reserves the right to enter the Premises as provided in this Section 5.B.  City and City's Associates shall not be deemed guilty of trespass upon the Premises, or to have violated any of Tenant's rights hereunder, by reason of such entrance into any portion of the Premises."

> *Id.* (at p. 7).

13.     The BSJ Lease Agreement provides the following relating to any alleged default by Plaintiff BSJ, and related notice requirement it failed to comply with:

> "City shall not be in default under this Agreement unless City fails to perform an obligation required of City under this Agreement within thirty (30) day after written notice by Tenant to City.  If the nature of City's obligation is such that more than thirty (30) days are reasonably required for performance or cure, City shall not be in default if City commences performance within such thirty (30) day period and thereafter diligently prosecutes the same to completion. . . . ."

*Id*. (at p. 15).

14.     The BSJ Lease Agreement provides the following relating to the required written notice Plaintiff BSJ failed to provide: "Any notice, demand, written consent, or other communication required to be in writing under this Agreement shall be given in writing . . . to" Ogden City by way of it being properly sent to the Airport Manager and with a required, simultaneous copy to the Ogden City Attorney.  *Id*. (at p. 17).

15.     Plaintiff BSJ fails to allege that it provided proper written notice to the City relating to any alleged default associated with airport access or Mr. Durbano's security badge.

16.     Plaintiff BSJ has not alleged that Ogden City ever waived expressly or in writing any of the provisions of the BSJ Lease.

17.     Plaintiff BSJ has contradicted the alleged claim of a "taking" by also alleging that it – ***the entity* and *only* party-Plaintiff in this case** – was <u>not</u> deprived of access with its Vice President Jared Brown maintaining security badge access, and thus access for Plaintiff, at all times material.  *See*, *e.g.*, Verified Complaint, ¶ ¶ 45, 84, and 85.

18.     Plaintiff has alleged and asserted that security at the airport is related to protection of the public, and with certain security and access limitations relating to protecting the public. Verified Complaint, pp. 4-6.

## V.  <u>ARGUMENT</u>

Plaintiff has failed to state any viable claim for relief in the present case, and failed to allege plausible facts/claims supporting its causes of action, and has essentially filed the recent Verified Complaint as a "Trojan Horse" attempting to take a second bite of the apple on claims already presented and dismissed by this Court in the Class-Action.  Plaintiff's ploy here is nothing more than a costly waste of time and resources for both the judiciary and the Defendants.  *See* Plaintiff's

Verified Complaint, pp. 8-9. The subjective, emotional opinions of just one of Plaintiff's officers, that also just so happens to have a separate unrelated hangar lease at issue in a separate pending case, do not give rise to cognizable legal claims for Plaintiff.

### A. Plaintiff's Claims are Barred by Issue Preclusion

All of the four required elements for issue preclusion (collateral estoppel) are satisfied here: "(i) the party against whom issue preclusion is asserted was a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication was identical to the one presented in the instant action; (iii) the issue in the first action was completely, fully, and fairly litigated; and (iv) the first suit resulted in a final judgment on the merits." *Moss v. Parr Waddoups Brown Gee & Loveless*, 285 P.3d 1157, 1164 (2012), quoting *Jensen ex rel. Jensen v. Cunningham,* 250 P.3d 465 (2011).

Unlike the doctrine of claim preclusion, issue preclusion does not require that "both cases ... involve the same parties or their privies." *Madsen v. Borthick*, 769 P.2d 245, 247 (Utah 1988). "Mutuality of parties" is not essential for issue preclusion. *Wilde v. Mid-Century Ins. Co.*, 635 P.2d 417, 419 (Utah 1981). "Privies," in the context of issue preclusion, means "a person [or entity] so identified in interest with another that he represents the same legal right." *Searle Bros. v. Searle*, 588 P.2d 689, 691 (Utah 1978). Issue preclusion "serve[s] the important judicial policy, among others, of preventing issues once litigated from being relitigated." *Penrod v. Nu Creation Creme, Inc.*, 669 P.2d 873, 874–75 (Utah 1983).

In the present case, Plaintiff BSJ Travel, Inc. was a known "Doe" Plaintiff in the pending class-action previously dismissed by this Court. Also, Plaintiff BSJ is a privy, including through Mr. Durbano, of at least one other Plaintiff in the dismissed class-action case, Durbano Properties, L.C. The issues raised in the class-action case previously dismissed are also again raised here by

Plaintiff BSJ.  With the dismissal by this Court, the issues in the class-action case identical to the issues raised here were completely, fully, and fairly litigated (and are now pending on appeal) on the merits.

Issue preclusion bars the claims raised here by Plaintiff BSJ.  The overt and express redundancy of the claims and allegations asserted by Plaintiff BSJ falls squarely into the policy behind issue preclusion and the important judicial policy behind the "need for preventing issues once litigated from being relitigated."

Even without issue preclusion, Plaintiff BSJ should be estopped from pursing these claims. BSJ is fairly included among the plaintiffs in the Class-Action, or should have been, and cannot now benefit from intentionally withholding its name from the class and the list of named plaintiffs, only to now bring yet another similar lawsuit in a different court because it did not get the result it hoped to achieve in the first one. This is tantamount of forum or judge shopping. Plaintiff BSJ's claims should be dismissed.

### B.  Plaintiff's Claims Fail Because of Mootness

"The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction."  *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011), quoting 15 James W. Moore & Martin H. Redish, Moore's Federal Practice § 101.90, at 101–237 (3d ed. 2010). "Federal courts only have jurisdiction to consider live, concrete cases or controversies."  *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012).

"Courts recognize two kinds of mootness: constitutional mootness and prudential mootness." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121 (10th Cir.2010).  Constitutional mootness focuses on whether "a definite controversy exists throughout

the litigation and whether conclusive relief may still be conferred by the court despite the lapse of time and any change of circumstances that may have occurred since the commencement of the action." *Jordan*, 654 F.3d at 1024. Prudential mootness addresses the court's discretion in the exercise of that power, and "[i]n general, the prudential mootness doctrine only applies where . . . a plaintiff seeks injunctive or declaratory relief. *Id.* "[I]n the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant." *Id*. at 1025.

Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance, and "'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.'" *Id*. at 1024, quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).

The security badge complained about was again issued or otherwise provided to Mr. Durbano on November 18, 2022. *See* Decl. of Garrett, ¶ 4. Plaintiff has no viable claim here, but even if there was a viable claim it is rendered moot by Mr. Durbano's present possession of a security badge. Thus, Plaintiff BSJ's claims should independently be dismissed because of mootness.

### C.    *Plaintiffs' Physical Taking Claim is Not Supported by the Law or the Facts*

The Fifth Amendment's Takings Clause states that "private property [shall not] be taken for public use, without just compensation." U.S. Const. amend. V. "When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner, *United States v. Pewee Coal Co.*, 341 U.S. 114, 115 (1951), regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof. Thus, compensation is mandated when a leasehold is taken and the government occupies the

property for its own purposes, even though that use is temporary." *United States v. General Motors Corp.*, 323 U.S. 373 (1945), *United States v. Petty Motor Co.*, 327 U.S. 372 (1946).

"To make a cognizable claim of a taking in violation of the Fifth Amendment, the plaintiffs must first show that they possess a recognized property interest which may be protected by the Fifth Amendment." *Wash. Legal v. Mass. Bar Found.*, 993 F.2d 962, 973 (1st Cir. 1993). Plaintiff here alleges "[t]he Defendants have taken Plaintiffs [sic] possession of and thereby taken actual possession of Plaintiffs [sic] property without paying just and fair compensation as required by the law and constitution." Verified Complaint, ¶ 65.[6] This allegation fails to identify the "recognized property interest" allegedly being taken, and is circular and merely conclusory. Whether it be the security badge or the leasehold, Plaintiff BSJ's property interest at issue in this matter is concomitant with its current lease with the Airport.

A plaintiff who is suing in connection with a government contract "is entitled to a takings remedy **only** if it is foreclosed from bringing a breach of contract action, *i.e.*, if its contract rights have been 'taken'." *Pi Electronics Corp. v. United States*, 55 Fed.Cl. 279, 285 (Fed.Cl.2003)(emphasis added); *Hughes Communications v. United States*, 271 F.3d 1060, 1070 (Fed.Cl.2002); *Castle v. United States*, 301 F.3d 1328, 1342 (Fed.Cir.2002). "[G]overnment's breach of a contract does not effect a taking of a private party's contractual rights if the government does not deprive the private party of its contractual rights stemming from the breach of a contract." *Zoeller v. United States*, 65 Fed. Cl. 449, 461 (2005). In *Zoeller* a lessee of government land brought suit against the government alleging that its termination of a lease effected a taking. *Zoeller*, 65 Fed.Cl. at 452. The court noted that plaintiff's claims arose out of the termination of

---

[6] Here, it is not clear what property interest Plaintiff BSJ claims has been taken. It appears that Plaintiff BSJ is referring to the actual security badge, but given the vague nature of the allegations, may also be referring to the leasehold. In either case, the complaint fails under Rule 12(b)(6).

the lease, and held that the lease between the plaintiff and the government "prescribed the contract rights of the parties upon termination." *Id*. at 462. The lease "contemplated and provided a method of resolving damages upon [its] termination," and "[b]y entering into the Lease, the plaintiff agreed to be compensated under the terms of the Lease." Id. *Zoeller* further noted that the government did not prevent the plaintiff from seeking contractual remedies for losses related to the termination, and that in fact the plaintiff did pursue a breach of contract case with the state. Id. As a result, the *Zoeller* court dismissed the taking claim. "[W]hen rights related to a contract with the government are at issue, taking claims are rarely appropriate 'because the Government acts in its commercial or proprietary capacity in entering contracts, rather than in its sovereign capacity.'" Memorandum Decision, p. 10, Case No. 1:21-cv-00075 (also at *Ogden Reg'l Airport Ass'n, Inc.*, 2022 WL 2670037 (D. Utah July 11, 2022)).

The BSJ Lease governs its right to access the airport. Plaintiff has not made any allegation that the general public, without a lease or some other contractual relationship to the airport, is afforded the right to possess a security badge. Moreover, there is no "right" to a security badge held by every officer or agent of Plaintiff. Here, just as in the Class-Action, and as in *Zoeller*, the parties entered into a contract that specified what would occur when a party is alleged to have breached the contract. Additionally, there exists express protocol for any disputes regarding the issuance, maintenance, suspension or revocation of the security badge of a lease and Plaintiff BSJ has not alleged any facts to establish that it has pursued this protocol or been deprived of it. Plaintiff BSJ has not been deprived of its leasehold with the City. It may seek enforcement of the lease, which includes enforcement of the security badge protocol.

Moreover, Plaintiff has itself alleged that it was only one officer of the entity that was for a time denied a functioning security badge due to safety violations causing contract default relating

to Durbano Properties, L.C., and that an officer of **Plaintiff**, Jared Brown, had a functioning security badge *at all times material*. *See* Verified Complaint, ¶45.   Thus, by Plaintiff's own allegations, Plaintiff – the entity, and the only Plaintiff in this case – was never denied the access that <u>it</u> asserts as an entity, and as the foundation of its entire case.   Further, as a matter of law, Plaintiff still has no viable takings claim because it has not been foreclosed from bringing a breach of contract action.Plaintiff's taking claim has no merit and must be dismissed.

> ### D.        *No Retaliation in Violation of the First Amendment's Petition Clause*

Plaintiff BSJ in the present case claims, just as the Plaintiffs did in the Class-Action case, that Ogden City "retaliated" against it for engaging in constitutionally protected activity in violation of the First Amendment.[7] To make out a claim of unlawful retaliation by government officials in response to the exercise of his or her First Amendment right to petition, the Tenth Circuit has indicated three elements must be present. *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018).   The plaintiff must show that (a) he or she was engaged in constitutionally protected activity; (b) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (c) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *See Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000). The Tenth Circuit has stated that "[a]ny form of **official** retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom." *Lackey v. County of Bernalillo,* No. 97–2265, 1999 WL 2461, at *3 (10th Cir. Jan.5, 1999) (emphasis added).

---

[7] In the Class-Action, the plaintiffs claimed that Ogden retaliated against them by withholding renewals and using security badges to penalize them, while in the present case, the plaintiff seems only to claim that Ogden retaliated against it by withholding a security badge. Although the nature of the alleged retaliations varies, the outcome is the same: dismissal.

In the Class-Action, the Court dismissed the Plaintiffs' First Amendment retaliation claim, ruling that because "Plaintiffs [] failed to plausibly allege the [second and third] elements of a retaliation claim, their claim must be dismissed."  Memorandum Decision, p. 17 (Case No. 1:21-cv-00075-DBB-DBP), entered July 11, 2022.   In the present case, Plaintiff likewise fails to plausibly allege facts to support the second and third elements. In fact, it appears BSJ fails even to allege facts to support the first element, such that it fails to identify the constitutionally protected activity it claims to have engaged in and for which it is being retaliated.  Assuming the alleged protected activity is the brining of this lawsuit, Plaintiff fails to alleged facts sufficient to establish that all Defendants engaged in any adverse action against BSJ *as a response* to BSJ's exercising its First Amendment rights by bringing this lawsuit. The alleged retaliatory act—refusal to issue a security badge—is the very reason BSJ filed this lawsuit. In other words, as Judge Barlow also reasoned, the Defendant's decision not to issue Doug Durbano a security badge upon his demand caused this lawsuit, not the other way around. *See* Class-Action, Dkt. #98, p. 18.   Ogden has not done anything inconsistent with the provisions of the BSJ Lease Agreement or the security badge protocol, which Plaintiff failed to pursue.  Plaintiff BSJ, just as in the Class-Action, has failed to allege facts sufficient to show that any of Ogden's actions caused Plaintiff BSJ to suffer an injury that would chill a person of ordinary firmness, or that any of Ogden's purportedly adverse action was substantially motivated as a response to Plaintiff BSJ's exercise of constitutionally protected conduct. The Allegation that Defendants' actions have had a chilling effect on "Plaintiff's (sic) and others" is not supported by Plaintiff BSJ's allegations in this case.  Plaintiff BSJ fails to allege any plausible retaliatory activity. Additionally, Plaintiff BSJ simply lumps all of the Defendants together in all of these claims, including retaliation, but fatally fails to allege which Defendant engaged in which wrongful conduct.

Lastly, Mr. Durbano's security badge simply expired and was up for renewal. It was not revoked or suspended. Instead, he was required to comply with certain lese requirements as part of the renewal process. He fought those requirements, but after finally agree to comply, his security badge was renewed.

Plaintiff BSJ has failed to plausibly allege all three necessary elements to have a viable First Amendment retaliation claim.

### E.   No Liability for Deprivation of Rights in Violation of 42 U.S.C. § 1983

Plaintiffs seek to hold Ogden City responsible for the deprivation of their constitutional rights under Section 1983. *See* 42 U.S.C. § 1983.  Section 1983 does not alone create any substantive right; rather it provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws. *See Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir. 1989).

As outlined above, Plaintiff has failed to identify any constitutional violations caused by Ogden City.  As this Court determined when it recently dismissed the companion class-action case, without a constitutional violation, Plaintiff has no viable claim under Section 1983.  Accordingly, Plaintiff cannot be entitled to a preliminary injunction based on its Section 1983 claim.

### F.   Plaintiff is Not Entitled to Any Declaratory Relief

Plaintiff seeks declaratory relief under 28 U.S.C. § 2201 (the "Declaratory Judgment Act"). That section provides:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). The general purpose of this section is to provide an immediate forum for the adjudication of rights and obligations in an actual controversy where that controversy may be

settled in its entirety and with expediency and economy. See *Duggins v. Hunt*, 323 F.2d 746, 748 (10th Cir. 1963).

As this Court stated in its recent Memorandum Decision dismissing the companion class-action case involving the same claims relating to security badges, "the court has jurisdiction to provide declaratory relief pursuant to the Declaratory Judgment Act only if there is 'some independent basis jurisdiction' for doing so." Memorandum Decision (Case No. 1:21-cv-00075-DBB-DBP), p. 20, entered July 11, 2022.   "Because all of Plaintiffs' federal claims have been dismissed . . . the court does not have jurisdiction to provide the declaratory relief Plaintiffs seek." Id., p. 21.  Here, similarly, Plaintiff's federal claims are without merit; accordingly, there is no basis for this Court to apply 28 U.S.C. § 2201 to grant preliminary injunctive relief.

### G.  *Plaintiff's Claim for Injunctive Relief Cannot Support Any Injunction*

As outlined above, Plaintiff's claims have no merit and must be dismissed. A claim of injunctive relief cannot survive independent of the substantive claims of the complaint. If they fail, so does the request for an injunction. Regardless, Plaintiff claims being deprived access by way of use of a security badge by one officer, Mr. Durbano, yet alleges a different officer of Plaintiff, Mr. Brown, was not deprived access by way of use of a security badge.  Thus, Plaintiff – a business entity – was not actually denied access and suffered no injury.  For this reason alone, Plaintiff's claim for injunctive relief has no substantial likelihood of success on the merits.

Plaintiff alleges Ogden City's "unconstitutional demands to inspect the inside of hangars and other personal property contained within the hangars, at risk of having the City shut off security badges denying access and possession to property, without due process, including obtaining properly issued court orders and or subpoenas or search warrants constitutes a violation of constitutional protected rights and must be restrained."   Verified Complaint, ¶ 55.  This

allegation totally ignores the BSJ Lease Agreement and its express terms providing for access and inspection.  Ogden City has done nothing contrary to the parties' Lease Agreement, let alone anything that could plausibly be considered "unconstitutional," and sufficient facts supporting such claims have *not* been alleged.

Moreover, Plaintiff BSJ's claims are entirely contradicted by the terms of the BSJ Lease Agreement, and Administrative Policy 2070-1 (emphasis added): "Airport tenants, operators, and users have ***no contractual or property interest in the issuance or retention of a Badge***."

Even if Ogden City was somehow in breach of the BSJ Lease, Plaintiff would still have difficulty pursuing a contract claim.  Plaintiff has failed to exhaust all available contract and administrative remedies, including those under the BSJ Lease and Administrative Policy 2070. *See Patterson v. Am. Fork City*, 2003 UT 7, ¶¶ 14-21, 67 P.3d 466, 471–73 (2003); *see also* Decl. of Counsel, Exhibit C; *and see* Decl. of Garrett, Exhibit A.  Ultimately, and independent of any theoretically available state law claim, Plaintiff has no viable federal claims and this Court lacks jurisdiction, and as a result there is no basis to award any injunctive relief.  Thus, Plaintiff BSJ's claims should be dismissed.

## V.  <u>CONCLUSION</u>

Defendants respectfully request that the Court dismiss Plaintiff BSJ's Verified Complaint and award attorney fees and costs to Ogden City under the BSJ Lease which allows for the recovery of said fees and costs, and which governs this dispute and is a basis for dismissing Plaintiff's Verified Complaint.

**DATED** this 15th day of February, 2023.

SMITH KNOWLES, P.C.
/s/ *Stephen F. Noel*
Stephen F. Noel
Ryan D. Poole
*Attorneys for Defendant Ogden City*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2023, I filed the foregoing pleading electronically through the E-filing/Tybera system.  I certify that on such date I served the foregoing pleading on the following parties by electronic means through the E-filing/Tybera system:

Steve H. Bergman
RICHARDS BRANDT MILLER NELSON
Steven-bergman@rbmn.com

Douglas M. Durbano
Richard A. Bednar
DURBANO LAW FIRM
office@durbanolawfirm.com
richard@durbanolawfirm.com

*/s/ Shannon Strausbaugh*
Paralegal